IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELO FORCHU

        v.

USRP I LLC

:
:
:   Civil Action No. DKC 24-2650
:
:

## MEMORANDUM OPINION

This case arises from alleged commercial lease discrimination by Defendant USRP I LLC ("Defendant") and its later alleged breach of a commercial lease agreement. Presently pending and ready for resolution are (1) the motion to dismiss filed by Defendant (ECF No. 8); (2) the motion for extension of time to file a response filed by Plaintiff Melo Forchu ("Plaintiff") (ECF No. 9); the motion to strike Plaintiff's response in opposition to Defendant's motion to dismiss filed by Defendant (ECF No. 11); and (4) the motion to withdraw appearance filed by Plaintiff's counsel (ECF No. 13). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted, the motion for extension of time will be granted, the motion to strike will be denied, and the motion to withdraw will be granted.

I.    **Background**

    A.    **Factual Background**[1]

Plaintiff, an individual of African descent, is a doctor and the owner and operator of Best Pharmacy, a tradename of Melorejuventation & Meloweightloss LLC. (ECF No. 2 ¶ 6). On November 3, 2020, Melorjuvenation & Meloweightloos LLC entered into a commercial lease agreement ("Lease") with Defendant, with Plaintiff serving as a personal guarantor. (*Id.* ¶ 7). The leased property is located at 6875 New Hampshire Avenue Unit 3, Takoma Park, Maryland 20912. The Lease was an "as is" transaction. (*Id.* ¶ 13). "Defendant[] nor its agents informed Plaintiff of material defects to the subject property that could not be readily ascertained upon inspection." (*Id.* ¶ 14).

The Lease term was for one hundred and twenty (120) months with an annual rent of $57,060 for the first year, broken into monthly payments of $4,755. In addition to the minimum monthly rent payment, Plaintiff was required to "pay a share of the common area costs, taxes, and insurance, raising his total monthly rent payment to $5,931.07 for the first twelve (12) months." (*Id.* ¶ 11). One of the common areas defined in the Lease was the roof.

---

[1] The following facts are set forth in the complaint and construed in the light most favorable to the Plaintiff.

Under the terms of the Lease, "Plaintiff was to build out the subject property to operate the medical center, including improvements to the plumbing, HVAC, and electrical systems, at his sole expense." (*Id.* ¶ 12). Additionally, the Lease provided that "if Plaintiff did not open for business within one hundred [and] eighty days (180) from the time he took possession of the subject property, he could be penalized $156.33 per day that he failed to open in addition to his total monthly rent payment." (*Id.* ¶ 15). Under the Lease, Defendant was "solely responsible for the maintenance and repair of the roof" and "[a]ny repairs or other work one to the roof were required to be completed by the Defendant's contractor." (*Id.* ¶¶ 23-24).

Plaintiff paid a $5,931.07 security deposit, and on November 4, 2020, Defendant delivered possession of the property to Plaintiff. Plaintiff "retained an architect and general contractor recommended by [Defendant]" and Plaintiff "hired one of Defendant's as the construction manager for the build out project." (*Id.* ¶¶ 18-19).

On or around January 5, 2021, Plaintiff contacted Defendant to inquire about "the condition of the building at the time the former tenant vacated the unit, particularly regarding the HVAC systems." (*Id.* ¶ 20). Defendant did not provide Plaintiff with the requested information. "Throughout construction of the build-

out, Plaintiff reported serious physical deficiencies with the subject property and was simply told that he accepted the space 'as is[.']" (*Id.* ¶ 22).

The roof needed to be repaired several times during the build out and "[o]n one occasion, the defects in the roof caused a leak inside of the subject property, requiring the replacement of ceiling tile." (*Id.* ¶ 27). "The condition of the building affected the ability of Plaintiff to complete the renovations and open for business." (*Id.* ¶ 28). On May 3, 2021, 180 days from the day Plaintiff took possession of the premises, Plaintiff "was still in the process of renovating the subject property and could not open for business." (*Id.* ¶ 29). Under the Lease the Parties were excused from "performing an act required under the terms of the agreement where performance was delayed, hindered, or prevented by reason of an occurrence beyond the reasonable control of the Party delaying in performance." (*Id.* ¶ 30). In June of 2021, Defendant directed that the build out and renovation of the property be stopped. (*Id.* ¶ 32). On February 17, 2022, Plaintiff received notice that Defendant was charging him for the delay in opening his business. (*Id.* ¶ 34). From May 3, 2021, through February 17, 2022, Plaintiff continued to pay both the minimum monthly rent required under the Lease and for the build-out and renovation of the property. (*Id.* ¶¶ 35-36). Despite paying his share of the

common area maintenance, Defendant charged, and Plaintiff paid, for the costs of the repairs of the roof. (*Id.* ¶ 37). Defendant demanded Plaintiff pay an additional $45,335.34 by February 27, 2022. (*Id.* ¶ 38). Plaintiff disputed owing the additional penalty and continued to pay the minimum monthly rent, the cost of building construction, and the separate fees Defendant charged for its construction management services. (*Id.* ¶ 39). Defendant ultimately evicted Plaintiff on the sole basis that he did not pay the additional penalty. (*Id.* ¶ 40).

## B.  Procedural Background

Plaintiff filed a complaint as an individual (not on behalf of Melorejuventation & Meloweightloss LLC) in the Circuit Court for Prince George's County, Maryland on August 7, 2024. (ECF No. 1-3).[2]  On September 13, 2024, Defendant removed Plaintiff's suit to this court based on federal question jurisdiction pursuant

---

[2] This is not the only case between the parties. On November 15, 2023, Defendant (USRP I LLC) filed a complaint in the Circuit Court for Prince George's County, *USRP I, LLC v. Forchu*, No. C-16-CV-23-005184 (Md. Cir. Ct. Nov. 15, 2023) against Plaintiff (Mr. Forchu) and Plaintiff's LLC (Melorejuvenation & Meloweightloss LLC), alleging breach of contract against Plaintiff and the LLC. On January 30, 2025, after the pending motions were fully briefed, a judgment was entered against Plaintiff and the LLC and the case was closed. "[A] court may properly take judicial notice of matters of public record and other information that, under Federal Rule of Evidence 201, constitute adjudicative facts." *Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (quoting *Taylor v. Go-Getters, Inc.*, No. 20-cv-3624-ELH, 2022 WL 1127902, at *7 (D.Md. Apr. 15, 2022)).

to 28 U.S.C. § 1331. (ECF No. 1). Defendant filed a motion to dismiss for failure to state a claim on September 27, 2024. (ECF No. 8). Plaintiff moved for an extension of time to respond to Defendant's motion to dismiss on October 15, 2024, requesting that Plaintiff have until October 18, 2024, to file his response. (ECF No. 9). On October 25, 2024, Plaintiff filed his response in opposition to Defendant's motion to dismiss (ECF No. 10), and on November 1, 2025, Defendant filed a motion to strike Plaintiff's response. (ECF No. 11). Defendant replied to Plaintiff's response in opposition on November 8, 2024. (ECF No. 12). Plaintiff's counsel filed a motion to withdraw as counsel on February 18, 2025. (ECF No. 13).

## II. Motions for Extension of Time and to Strike

Local Rule 105.2(a) requires, in pertinent part, that "all memoranda in opposition to a motion shall be filed within fourteen days of the service of the motion." As noted, Defendant filed its motion to dismiss on September 27, 2024. Plaintiff's response was therefore due on October 11, 2024. Plaintiff did not move for an extension of time until October 15, 2024, four days after his response was due, and Plaintiff did not file his response until October 25, 2024, seven days after the requested extension date. Defendant has moved to strike Plaintiff's response in opposition as untimely.

Under Fed. R. Civ. P. 6(b)(1)(B), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

> "The Supreme Court has defined 'neglect' as encompassing 'late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *Arevalo v. Koski*, No. CIV. WDQ-13-3735, 2014 WL 2085352, at *2 (D.Md. May 15, 2014) (quoting *Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). "The Supreme Court has defined 'excusable' as 'at bottom an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission.'" *Id.* (quoting *Pioneer*, 507 U.S. at 395). "The relevant circumstances include the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay . . . and whether the movant acted in good faith." *Id.* (internal quotation omitted). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392.

*Shields v. Verizon Md., LLC*, 23-cv-02932-JMC, 2024 WL 1050996, at *3 (D.Md. Mar. 11, 2024). The *Pioneer* factors favor granting Plaintiff's motion for an extension of time. First, Defendant has not argued that it has or will suffer prejudice as a result of Plaintiff's delay. Second, while Plaintiff's fourteen-day delay

is not *de minimus*, it is shorter than the delays in other cases where excusable neglect was found. *See Escalante v. Tobar Constr., Inc.*, 18-cv-00980-PX, 2019 WL 109369, at *5 (D.Md. Jan. 3, 2019) (extending time for service to thirty-four days after the time for service had lapsed under Fed.R.Civ.P. 4). Third, consideration of Plaintiff's opposition will not have an adverse impact on the judicial proceedings in this matter given the rulings set forth in this memorandum opinion. Finally, Plaintiff appears to have acted in good faith the meet this court's deadline but failed to do so due to confusion with the dates of the parallel litigation in state court and a family matter. Accordingly, the court will grant Plaintiff's motion for an extension, and will consider Plaintiff's untimely opposition to Defendant's motion to dismiss, even though it was filed beyond the time requested.

"Local Rule 105.2(a) does not provide the consequence for a failure to meet the prescribed deadline. Thus, the district court, in its discretion, may decide whether to consider an untimely opposition." *Curtis v. Evans*, No. 2003-2774-DKC, 2004 WL 1175227, at *1 (D.Md. May 27, 2004) (citing *H & W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 252 (D.Md. 2000), *aff'd*, 30 Fed.Appx. 75 (4th Cir. 2002) (unpublished disposition)). Defendant has not shown that it was harmed by Plaintiff's delay, thus, the motion to

strike will be denied, and the court will consider Plaintiff's response.

### III. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)). A plaintiff's complaint must only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d

295, 299-300 (4ᵗʰ Cir. 2021) (quoting *Iqbal*, 556 U.S. at 663).
Legal conclusions couched as factual allegations are insufficient,
*Iqbal*, 556 U.S. at 678, as are conclusory factual allegations
devoid of any reference to actual events, *United Black Firefighters
of Norfolk v. Hirst*, 604 F.2d 844, 847 (4ᵗʰ Cir. 1979).

"As a general rule, the court does not consider extrinsic
evidence at the motion to dismiss stage[.]" *Faulkenberry v. U.S.
Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023) (quoting *Reamer
v. State Auto. Mut. Ins. Co.*, 556 F.Supp.3d 544, 549 (D.Md. 2021),
*aff'd*, No. 21-2432, 2022 WL 17985700 (4ᵗʰ Cir. Dec. 29, 2022)).
"However, 'the court may consider, without converting the motion
to dismiss into one for summary judgment, documents attached to
the complaint as exhibits, and documents attached to a motion to
dismiss if the document is integral to the complaint and there is
no dispute about the document's authenticity.'" *Faulkenberry*, 670
F.Supp.3d at 249 (quoting *Reamer*, 556 F.Supp.3d at 549).  "A
document is integral to the complaint if its very existence, and
not the mere information it contains, gives rise to the legal
rights asserted." *Faulkenberry*, 670 F.Supp.3d at 249 (quoting
*Reamer*, 556 F.Supp.3d at 549) (internal quotation marks omitted).

Defendant attached a copy of the Lease to its motion. (ECF
No. 8-2).  There is no dispute regarding the Lease's authenticity,
and the Lease is both incorporated by reference in the complaint,

10

and it establishes the contractual relationship between the parties that forms the basis for Plaintiff's claims. It is not necessary, however, to review the Lease for the court to resolve this matter.

**IV. Analysis**

Plaintiff alleges the following six counts against Defendant: Counts I-IV - violations of Title VI of the Civil Rights Act ("Title VI"), Count V - Breach of Contract, and Count VI - Unjust Enrichment. Defendant argues "the Title [VI] claims should be dismissed . . . because Plaintiff has not established Title VI standing . . . and has not met pleading requirements for his Title VI claims," "Plaintiff's unjust enrichment claim should be dismissed . . . because Plaintiff admits that there is a valid contract that covers the subject of his claim," and "this Court should use its discretion to dismiss the remaining breach of contract claim, for which no federal question exists." (ECF No. 8-1, at 1-2).

**A. Race Discrimination Under Title VI**

In Counts I-IV, Plaintiff alleges various violations of Title VI based on allegations that Defendant subjected Plaintiff to disparate treatment on the basis of his race and national origin. (ECF No. 2 ¶¶ 44, 53, 61, 71). Defendant moves to dismiss Counts I-IV arguing that Plaintiff has not alleged a plausible Title VI

violation. (ECF No. 8-1, at 4-9). Additionally, Defendant argues that Plaintiff's "pattern and practice" claims (Counts III and IV) should be dismissed because "in the context of a private, non-class action suit, a pattern and practice claim is not a separate cause of action but instead is merely another method by which disparate treatment can be shown." (ECF No. 8-1, at 9-10) (citing *Demuren v. Old Dominion Univ.*, 33 F.Supp.2d 469, 279-80 (E.D.Va. 1999) *aff'd,* 188 F.3d 501 (4th Cir. 1999)).

Under Title VI, no person shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" because of the person's race, color, or national origin. 42 U.S.C. § 2000d. The statute defines "Program or activity" in pertinent part, as:

> an entire corporation . . . (i) if assistance is extended to such corporation . . . as a whole; or (ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation . . . any part of which is extended Federal financial assistance.

42 U.S.C. § 2000d-4a (3)(A). "Courts have interpreted [42 U.S.C. § 2000d] as providing a private right of action to enforce claims of intentional discrimination . . . ." *Fordyce v. Prince George's Cnty. Md.*, 43 F.Supp.3d 537, 545 (D.Md. 2014) (citing *Peters v.*

12

*Jenney*, 327 F.3d 307, 318–19 (4ᵗʰ Cir. 2003); *Alexander v. Sandoval*, 532 U.S. 275, 280–83 (2001)).

To state a claim under Title VI, "a plaintiff must plead sufficient facts supporting that (1) the defendant is a recipient of federal financial assistance; and (2) the defendant intentionally discriminated against plaintiff on the basis of race, color, or national origin." *Carroll v. Walden Univ.*, 650 F.Supp.3d 342, 355 (D.Md. 2022) (quoting *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 21-cv-01637-PX, 2021 WL 5326463, at *3 (D.Md. Nov. 16, 2021)). Thus, a plaintiff must allege that he "suffered injury based on . . . discrimination and was either participating or seeking to participate in a federally funded activity, or was the intended beneficiary of those federal funds." *Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 716 (4ᵗʰ Cir. 2014).

In each of the four counts, Plaintiff alleges that Defendant "is a recipient of federal assistance, including, but not limited to, COVID-19 relief funds." (ECF No. 2 ¶¶ 45, 54, 62, 72). Plaintiff fails, however, to allege that he participated or sought to participate in a federally funded activity, or that he was the intended beneficiary of the COVID-19 relief funds.

In Plaintiff's opposition, he argues that the complaint "asserts that at a minimum, upon information and belief, Defendant

13

received federal assistance under the Coronavirus Aid, Relief, and Economic Security Act" and that "[o]ne of the primary activities of the . . . act was to provide mutual financial assistance to both landlords and tenants alike." (ECF No. 10-1, at 4). Plaintiff, however, cannot amend his complaint through the use of opposition briefs. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Even those additional conclusory allegations would be insufficient to allege the requisite nexus. Because the complaint does not allege that Plaintiff participated in or attempted participate in a federally funded activity or that Plaintiff was the intended beneficiary of the alleged federal funding, Plaintiff has failed to state a plausible Title VI claim and counts I-IV will be dismissed.

Defendant also argues that Counts I-IV must be dismissed because the "[c]omplaint relies on legal conclusions and unsupported, speculative allegations of fact." (ECF No. 8-1, at 8).

Title VI is only applicable to "instances of intentional discrimination." *Alexander*, 532 U.S. at 281. Thus, "[i]n order to survive a motion to dismiss under Title VI, a plaintiff must allege some facts to support that the defendant's 'alleged misconduct was motivated' by" race, color, or national origin.

14

*Carroll*, 650 F.Supp.3d at 356 (quoting *Evans*, 2021 WL 5326463, at *4).

In Counts I and III, Plaintiff alleges: "Defendant leased the subject property to the Plaintiff in terms that are less favorable than terms offered to similarly situated persons who are not of African de[s]cent," and "Defendant would not allow Plaintiff to negotiate the terms of the Lease in the same way that similarly situated persons who are not of African de[s]cent." (ECF No. 2-3 ¶¶ 46-47, 63-64). Similarly, in Counts II and IV Plaintiff alleges: "Defendant leased the subject property to the Plaintiff in terms that are less favorable than terms offered to similarly situated persons whose national origin is the United States or other Western Eurocentric country" and "Defendant would not allow Plaintiff to negotiate the terms of the Lease in the same way that similarly situated persons whose national origin is the United States or other Western Eurocentric country." (*Id.* ¶¶ 55-56, 73-74). Plaintiff's allegations do not plausibly form the basis for a claim under Title VI. Plaintiff has not alleged any connection to his race or national origin and the alleged treatment received from Defendant. Critically, Plaintiff does not allege how he is similarly situated to other tenants, what terms those tenants were able to negotiate, or how the terms of his lease were "less favorable" than those of other tenants.

15

Viewing the allegations in the light most favorable to Plaintiff, Plaintiff does not provide factual support to make his claims of animus plausible, accordingly Counts I-IV will be dismissed.[3]

## B.    Supplemental Jurisdiction

Plaintiff's remaining claims arise under Maryland state law, and there is no independent basis for federal jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over state law claims if the court has dismissed all federal claims. *Kovachevich v. Nat'l Mortg. Ins. Corp.,* No. 23-2071, --- F.4 ---, 2025 WL 1680186, at *6 (4th Cir. June 16, 2025). This case is still in its early stages, and the remaining claims sound in state law. Therefore, the court will exercise its discretion and remand Plaintiff's state claims to state court, which is better suited to adjudicate those claims.

---

[3] Additionally, Plaintiff failed to respond to Defendant's argument regarding his pattern and practice claims, and Defendant's point appears well-taken. Plaintiff has not alleged plausible Title VI violations in Counts III and IV, and in any event, "[a] plaintiff who fails to respond to an argument raised in a dispositive motion is deemed to have abandoned the claim." *Mincey v. State Farm Ins. Co.*, 672 F.Supp.3d 59, 62 (D.Md. 2023). Thus, dismissal of Counts III and IV is also warranted on these grounds.

C.    **Motion to Withdraw as Counsel**

On February 18, 2025, Plaintiff's counsel filed a motion to withdraw appearance, asserting that "counsel has experienced considerable issues in consistent communication with the Plaintiff, rendering continued effective representation increasingly difficult . . . ." (ECF No. 13, at 1).

Local Rule 101.2 provides, in relevant part:

> In the case of an individual, appearance of counsel may be withdrawn only with leave of Court and if (1) appearance of other counsel has been entered, or (2) withdrawing counsel files a certificate stating (a) the name and last known address of the client, and (b) that a written notice has been mailed to or otherwise served upon the client at least seven (7) days previously advising the client of counsel's proposed withdrawal and notifying the client either to have new counsel enter an appearance or to advise the Clerk that the client will be proceeding without counsel. If the withdrawal of counsel's appearance is permitted, the Clerk shall notify the party that the party will be deemed to be proceeding without counsel unless and until new counsel enters an appearance on behalf of the party.

Here, Plaintiff's counsel has complied with Local Rule 101.2 because the motion provides the requisite certificate of compliance stating Plaintiff's name and last known address, and affirming under the penalties of perjury that written notice was timely mailed from counsel to Plaintiff regarding the proposed withdrawal. Accordingly, counsel's motion to withdraw appearance will be granted.

17

**V.    Conclusion**

For the foregoing reasons, Defendant's motion to dismiss, will be granted with respect to the federal claims asserted in Counts I, II, III, and IV, Plaintiff's motion for extension of time will be granted, Defendant's motion to strike will be denied, and the motion to withdraw appearance filed by Plaintiff's counsel will be granted.  The remaining state law claims asserted in Counts V and VI will be remanded to state court for further consideration.


                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge